UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEWEL UPSHAW,

                Plaintiff,                                        Hon. Paul L. Maloney

v.                                                                                  Case No. 1:19-cv-341

SSJ GROUP LLC, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This case arises from the tragic death of Zena "Zeke" Upshaw.   In the spring of 2018, Upshaw was a player for the Grand Rapids Drive, a member of the National Basketball Association's G League.   During a March 24, 2018, Drive game, Upshaw collapsed and died two days later.   Upshaw's mother, Jewel Upshaw, initiated this action against one individual and several entities.   This matter is before the Court on the motions to dismiss filed by all but one of the remaining defendants.   (ECF No. 108, 112, 126, and 146).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be granted in part and denied in part as detailed herein.

## BACKGROUND

In her Second Amended Complaint, Jewel Upshaw (Plaintiff) alleges the following.   Zena "Zeke" Upshaw (Upshaw) was a basketball player who, in the spring of 2018, played for the Grand Rapids Drive, a member of the National Basketball

Association's G League.   On March 24, 2018, during a Drive game, Upshaw collapsed suddenly because his "heart had stopped."   Upshaw lay face down on the court, motionless, with his arms "twisted in [an] awkward, unnatural position."

The Drive's team doctor, Dr. Edwin T. Kornoelje, was not present to assist Upshaw, having departed the game early.   Immediately following Upshaw's collapse, "staff and personnel" gathered around Upshaw as he lay unconscious, but none of these individuals undertook any action to assess Upshaw's condition or administer treatment. Several minutes later, paramedics employed by Life Emergency Medical Services (EMS) walked on to the court with a stretcher.

Despite Upshaw's apparent and obvious condition, the paramedics took no action to assess Upshaw's condition or provide him treatment.   Instead, the paramedics simply placed Upshaw on a stretcher and removed him from the court.   Upshaw was subsequently transported to a local hospital where an assessment revealed that he "was effectively 'brain dead.' "   Upshaw was placed on "comfort care" and passed away two days later.

Plaintiff, in both her personal capacity and in her capacity as the personal representative of Upshaw's estate, initiated the present action against: (1) SSJ Group, LLC; (2) The DeltaPlex Arena; (3) University of Michigan Health System; (4) University of Michigan Board of Regents; (5) Life EMS; (6) National Basketball Association (NBA); (7) Detroit Pistons Basketball Company; and (8) Edwin Kornoelje, D.O.   Plaintiff

subsequently settled her claims against Defendants NBA and Detroit Pistons.   The remaining defendants, save Life EMS, now move to dismiss Plaintiff's claims.

## LEGAL STANDARD

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).   The Court need not accept as true, however, factual allegations that are "clearly irrational or wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

As the Supreme Court has held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).   This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Id.*   As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a

> complaint that states a plausible claim for relief survives a
> motion to dismiss . . . .  Determining whether a complaint
> states a plausible claim for relief will, as the Court of Appeals
> observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common
> sense. But where the well pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the
> complaint has alleged – but it has not "show[n]" – "that the
> pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

The burden to obtain relief under Rule 12(b)(6) rests with the defendant.  *See,*
*e.g., DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).   The Court must
"construe the complaint in the light most favorable to the plaintiff, accept its allegations
as true, and draw all reasonable inferences in favor of the plaintiff."   A motion to dismiss
"should not be granted unless it appears beyond doubt that the plaintiff can prove no set
of facts in support of [her] claim which would entitle [her] to relief."  *Ibid.*

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may
consider the complaint and any exhibits attached thereto, public records, items
appearing in the record of the case, and exhibits attached to the defendant's motion to
dismiss provided such are referenced in the complaint and central to the claims therein.
*See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see*
*also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at
*1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the
pleading" and "the Court may properly consider the exhibits . . . in determining whether
the complaint fail[s] to state a claim upon which relief may be granted without

-4-

converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Jurisdiction in this Court is established by the diverse citizenship of the parties. *See* 28 U.S.C. § 1332. Accordingly, Michigan substantive law provides the rules for decision. *See K.V.G. Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 822 (6th Cir. 2018). In this regard, the Court applies "the same law that Michigan state courts would apply." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018). If the Michigan Supreme Court "has spoken on an issue, [this Court is] generally bound by that decision." Where the Michigan Supreme Court has failed to decide a particular issue or provide clear guidance, the Court considers the decision of the lower Michigan courts "as authoritative absent a *strong showing* that the [Michigan Supreme Court] would decide the issue differently." *Ibid.* (emphasis in original). In such a circumstance, the Court may also consider "other available data, such as Restatements, treatises, law reviews, jury instructions, and any minority rule among other states." *Ibid.*

# ANALYSIS

## I.    Wrongful Death

In Count VII of her Second Amended Complaint, Plaintiff advances a "cause of action against all defendants" for "wrongful death and exemplary damages." Defendants all appear to concede that, while Plaintiff may assert a wrongful death action, she cannot pursue it as a separate and distinct cause of action.   Defendants further argue that exemplary damages are not recoverable in a wrongful death action.

Michigan does not recognize a common law right to "recover damages for a wrongfully caused death," but instead, the "exclusive remedy under which a plaintiff may seek damages for a wrongfully caused death" is that provided by the Michigan wrongful death act.   *Jenkins v. Patel*, 684 N.W.2d 346, 350 (Mich. 2004).   In relevant part, the Michigan wrongful death act provides:

> Whenever the death of a person . . . shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages . . ."

Mich. Comp. Laws § 600.2922(1).

The act provides that a wrongful death action must be asserted "by, and in the name of, the personal representative of the estate of the deceased."   Mich. Comp. Laws § 600.2922(2).   The wrongful death act "does not change the character of" the claim being asserted thereunder.   *Patel*, 684 N.W.2d at 350.   Accordingly, "a wrongful death

action grounded in medical malpractice is a medical malpractice action in which the plaintiff is allowed to collect damages related to the death of the decedent."   In other words, the wrongful death act serves as a filter through which "suits for tortious conduct resulting in death" are adjudicated.   *Ibid.*

With respect to damages, the wrongful death act provides that all "fair and equitable" damages are recoverable, including those attributable to: (1) medical and funeral expenses; (2) pain and suffering experienced by the deceased; and (3) loss of financial support and the loss of society and companionship of the deceased.   Mich. Comp. Laws § 600.2922(6).   On the question of exemplary damages, however, Michigan courts have long held that exemplary damages are not recoverable in a wrongful death action.   *See, e.g., Fellows v. Superior Products Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993); *White v. FCA US, LLC*, 579 B.R. 804, 813 (E.D. Mich. 2017).

Accordingly, the undersigned recommends that: (1) Plaintiff's separate claims for wrongful death articulated in Count VII be dismissed; (2) to the extent Plaintiff's other causes of action, premised upon injury to Upshaw rather than herself, survive scrutiny, such proceed under the rubric of the Michigan wrongful death act; and (3) Plaintiff's request for exemplary damages for wrongful death be rejected.

## II.    Defendant Kornoelje

With respect to Defendant Kornoelje, Plaintiff alleges the following.    On
November 9, 2016, and October 30, 2017, Upshaw participated in physical examinations
conducted by Dr. Kornoelje.   (ECF No. 92, PageID.1640).   These examinations were
"part of the Grand Rapids Drive's pre-season physical and cardiac health screenings."
(*Id*.).   Based upon the results of these examinations, "the Grand Rapids Drive cleared
Zeke Upshaw to play basketball."   (*Id*. at ¶ 70).

Upshaw's October 30, 2017, examination revealed "thickening of the heart," which
"should have prompted a more comprehensive evaluation including but not limited to
cardiac magnetic resonance (CMRI) imaging."   (*Id*. at ¶ 71).   Had such an evaluation
been performed, it would have revealed that Upshaw suffered from multiple cardiac
impairments thus "prompting restrictions on his participation in strenuous athletic
activity."   (*Id*. at ¶¶ 71-73).   Moreover, the examinations that Defendant Kornoelje
performed failed to comply with "the guidelines for preparticipation cardiovascular
screening of competitive athletes promulgated by the [American Heart Association]."
(*Id*. at ¶¶ 74-75).   Had the proper cardiovascular screening been performed, it would
have "prompted further medical study," the results of which would have revealed the
presence of cardiac abnormalities precluding Upshaw's further participation in
competitive athletics.   (*Id*. at ¶ 76).

Plaintiff has asserted the following causes of action against Defendant Kornoelje: (1) intentional infliction of emotion distress; (2) negligent infliction of emotional distress; (3) negligence; (4) gross negligence; and (5) medical malpractice.   Defendant Kornoelje argues that Plaintiff's claims, save his medical malpractice claim, must be dismissed. The Court agrees.

Under Michigan law, a claim for medical malpractice is distinguished from other types of claims by two characteristics: (1) the existence of a "professional relationship" and (2) "questions involving medical judgment." *Bryant v. Oakpointe Villa Nursing Centre*, 684 N.W.2d 864, 871 (Mich. 2004).   Accordingly, if a claim involves a professional relationship and concerns questions involving medical judgment, the claim "is subject to the procedural and substantive requirements that govern medical malpractice actions."  *Ibid.*

A professional relationship sufficient to maintain a claim of medical malpractice exists where a "licensed health care professional" was subject to a contractual duty "to render professional health care services to the plaintiff."   Plaintiff's allegations certainly satisfy this element.   As for the second requirement, the Court must assess whether the claim "alleges facts within the realm of a jury's common knowledge and experience" or instead requires the assistance of expert witnesses.   If the latter, the claim is one for medical malpractice.   *Ibid.*   As the factual allegations detailed above make clear, expert testimony will be needed to determine whether Defendant Kornoelje satisfied his duty as a medical doctor or instead committed malpractice.

Because Plaintiff's claims for intentional and negligent infliction of emotional distress, negligence, and gross negligence all concern the same factual allegations, which are beyond the knowledge and experience of a lay juror, such claims must all be dismissed as such are subsumed by Plaintiff's claim of medical malpractice.  *See, e.g., Sibley v. Borgess Medical Center*, 2008 WL 2744618 at *1-3 (Mich. Ct. App., July 15, 2008) (dismissal of negligence and gross negligence claims was appropriate because such involved a professional relationship and concerned matters beyond a lay juror's knowledge and experience); *Lucas v. Awaad*, 830 N.W.2d 141, 150-52 (Mich. Ct. App. 2013) (claim for intentional infliction of emotional distress must be dismissed "because the alleged actions occurred during the course of a professional relationship and [require] an examination of medical expertise or medical judgment. . . .").

Accordingly, the undersigned recommends that Defendant Kornoelje's motion to dismiss be granted and that Plaintiff's claims for intentional and negligent infliction of emotional distress, negligence, and gross negligence be dismissed.

## III.    University of Michigan Defendants

As to Defendants University of Michigan Health System and University of Michigan Board of Regents (collectively the University of Michigan Defendants), Plaintiff asserts the same claims she asserts against Defendant Kornoelje: (1) intentional infliction of emotion distress; (2) negligent infliction of emotional distress; (3) negligence; (4) gross negligence; and (5) medical malpractice.    The University of Michigan

Defendants argue that Plaintiff's claims must be dismissed pursuant to the Eleventh Amendment.   The Court agrees.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. amend XI.   This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States."   *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)).   This limitation extends not only to the State itself, but to its "agents" and "instrumentalities."   *See, e.g., Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997).

The University of Michigan Board of Regents, as an instrumentality of the State of Michigan, enjoys Eleventh Amendment immunity.   *See, e.g., Estate of Ritter v. University of Michigan*, 851 F.2d 846, 850-51 (6th Cir. 1988); *Kreipke v. Wayne State University*, 807 F.3d 768, 776 (6th Cir. 2015).   The University of Michigan Health System is also considered an instrumentality of the State of Michigan which likewise enjoys Eleventh Amendment immunity.   *See, e.g., Thomas v. Noder-Love*, 621 Fed. Appx. 825, 831 (6th Cir., July 17, 2015) ("the Eleventh Amendment renders both

-11-

Defendants University of Michigan and University of Michigan Health System immune
to all of Plaintiff's claims").

Plaintiff attempts to defeat this conclusion by arguing that Defendants are not
entitled to governmental immunity under *Michigan* law.   But, whether Defendants
would be entitled to immunity under Michigan law in an action properly pursued in a
state court is not relevant to the Eleventh Amendment analysis.   Accordingly, the
undersigned recommends that Plaintiff's claims against Defendants University of
Michigan Health System and University of Michigan Board of Regents be dismissed on
Eleventh Amendment immunity grounds.

## IV.    Defendant SSJ

As to Defendant SSJ, Plaintiff asserts several claims: (1) negligence; (2) gross
negligence; (3) negligent misrepresentation; (4) fraudulent concealment; (5) fraud by
omission; (6) intentional misrepresentation; (7) intentional infliction of emotional
distress; (8) negligent infliction of emotional distress; and (9) wrongful death.
Defendant SSJ advances several arguments why Plaintiff's claims should be dismissed.

### A.    Medical Malpractice

Defendant first argues that because Plaintiff's allegations "sound in medical
malpractice," a type of claim that cannot be asserted against SSJ, Plaintiff's claims
against it must be dismissed.   A claim for medical malpractice is limited to "questions
involving medical judgment" that arise in the context of a "professional relationship."
*Bryant*, 684 N.W.2d at 871.   Plaintiff has not alleged that Upshaw and SSJ enjoyed the

-12-

sort of professional relationship required to assert a claim of medical malpractice.    Thus, Defendant is correct that Plaintiff cannot assert a medical malpractice claim against it. This fact does not, however, result in the dismissal of Plaintiff's claims.

As noted above, where a plaintiff's allegations against a particular defendant concern "questions involving medical judgment" that arise in the context of a "professional relationship," she is limited to – as to that defendant – a claim for medical malpractice.    This result is intended to prevent a plaintiff from circumventing the requirements and standards applicable to medical malpractice claims by styling her claims as something else.    Defendant takes this concept one step further, however, and asserts that, in a circumstance where a plaintiff may assert a medical malpractice claim against any one defendant, such precludes the assertion of any other viable claims against any other potential defendant.    Defendant has identified no authority supporting this argument.    Accordingly, Defendant's argument is rejected.

B.    Worker's Disability Compensation Act

Defendant next argues that Plaintiff's claims are preempted by the Michigan Worker's Disability Compensation Act (WDCA), which allegedly serves as Plaintiff's exclusive remedy for her claims against it.    Citing to Federal Rule of Civil Procedure 12(b)(1), Defendant argues, therefore, that Plaintiff's claims must be dismissed for lack of subject matter jurisdiction.

By enacting the WDCA, the Michigan legislature "created a system that substitutes statutory compensation for common-law negligence liability and its related defenses." *Clark v. United Technologies Automotive, Inc.*, 594 N.W.2d 447, 450 (Mich. 1999). Under this scheme, "employers provide compensation to employees for injuries suffered in the course of employment, regardless of who is at fault" and, in return, "employees are limited in the amount of compensation they may collect from their employer" and are generally prohibited from asserting a tort claim against the employer. *Ibid.* (internal citations omitted). The "only exception" to the exclusive remedy provided by the WDCA is where the plaintiff alleges an intentional tort as defined by the WDCA. Mich. Comp. Laws § 418.131(1).

As the WDCA expressly states, "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy *against the employer* for a personal injury or occupational disease." *Id.* (emphasis added). The WDCA defines "employee" as including "the person injured, his or her personal representatives, and any other person to whom a claim accrues by reason of the injury to, or death of, the employee." Mich. Comp. Laws § 418.131(2). The WDCA does not define "employer," except to note that it includes certain entities that do not appear applicable in the present case. *Id.* In the absence of a statutory definition of "employer," the Michigan courts employ an "economic realities test" to determine whether, for purposes the WDCA, an employment relationship exists. *See Clark*, 594 N.W.2d at 450.

-14-

The exclusive remedy provision of the WDCA certainly applies to claims asserted by, or which could have been asserted by, the employee himself.   But the Michigan Supreme Court has also extended the WDCA's exclusive remedy to preclude claims asserted by individuals other than the employee alleging injury *to themselves* resulting from the injury to the employee.   For example, in *Hesse v. Ashland Oil, Inc.*, 642 N.W.2d 330 (Mich. 2002), a sixteen-year-old boy was killed in a workplace accident.   *Id.* at 330-31.   The boy's parents subsequently asserted against their son's employer a claim for negligent infliction of emotional distress for injuries they suffered.   *Id.* at 331.   The Michigan Supreme Court held that this claim was barred by the WDCA.   Specifically, the court held that the parents, as "any other person to whom a claim accrues by reason of the . . . death of . . . the employee," were "within the category of individuals barred from suit" by the WDCA.   *Id.* at 331-32.[1]   Thus, Plaintiff's claims against *Upshaw's employer* are barred by the WDCA, unless they come within its intentional tort exception.

This conclusion, however, simply begs the question whether Plaintiff has alleged that SSJ was Upshaw's employer or whether there is sufficient evidence to conclude that SSJ was Upshaw's employer.   Defendant argues that, because Plaintiff has alleged that SSJ was Upshaw's employer, Plaintiff's claims must be dismissed and instead be resolved pursuant to the WDCA (presumably in a different forum).   Accordingly,

---

[1] The Court acknowledges that this aspect of the *Hesse* decision is subject to persuasive criticism as articulated in the court's dissenting opinion.   642 N.W.2d at 335-38; *see also*, *Van Buren v. Panther Crankshafts*, 2008 WL 612225 at *5 (Mich. Ct. App., Mar. 6, 2008). But, as previously noted, where the Michigan Supreme Court has established a substantive rule of law, this Court is obligated to apply it.

Defendant argues that Plaintiff's claims against it should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

The Court interprets Defendant's argument as challenging the factual basis for jurisdiction.  In such a circumstance, the Court "has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists." *Adkisson v. Jacobs Engineering Group, Inc.*, 790 F.3d 641, 647 (6th Cir. 2015).  Moreover, the Court need not accept as true the allegations in Plaintiff's complaint, but instead "can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Global Technology, Inc. v. Yubei (XinXiang) Power Steering System Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). Plaintiff, as the party invoking federal jurisdiction, has the burden to establish that this Court may properly exercise jurisdiction over her claims.  *Ibid.*

While, for present purposes, the Court need not accept as true the allegations in Plaintiff's Second Amended Complaint, it is noted that Plaintiff does not allege that SSJ was Upshaw's employer.   While Plaintiff alleges that SSJ owns the Grand Rapids Drive and controlled certain aspects of Upshaw's employment, she does not allege that SSJ was Upshaw's employer.   The only evidence the parties have submitted on this question is: (1) the Standard Player Contract Upshaw executed on or about October 11, 2017, and (2) the NBA G League 2017-18 Player Handbook.   (ECF No. 112-2, PageID.1940-53; ECF No. 117-1, PageID.2140-65; ECF No. 118-1, PageID.2272-85).   The contract Upshaw executed identifies his employer as Basketball Services Corp. (BSC) and

nowhere mentions or references Defendant SSJ.   Likewise, the Player Handbook makes no mention of SSJ, but instead states that BSC "negotiates and signs all Contracts, pays players and provides insurance and other benefits to the players."   (*Id.*).

Plaintiff has, based on the present record, demonstrated that the Court can properly exercise jurisdiction over her claims against Defendant SSJ.   The evidence submitted by Plaintiff indicates that Upshaw's employer was BSC, and SSJ has presented no evidence suggesting otherwise.   Thus, the Court cannot conclude that Plaintiff's claims against SSJ are preempted by the WDCA.   Accordingly, Defendant's argument is rejected.[2]

### C.    Wrongful Death

Defendant next argues that Plaintiff's claims "must be dismissed in favor of a single wrongful death claim."   For the reasons articulated above, the Court agrees that Plaintiff's separate claim for wrongful death must be dismissed and, to the extent Plaintiff's other causes of action survive scrutiny, such must proceed under the rubric of the Michigan wrongful death act.

After arguing that Plaintiff's claims must be condensed into a single wrongful death claim, Defendant argues that Plaintiff's wrongful death claim "must be dismissed as well" on several grounds: (1) Plaintiff's claims sound in medical malpractice; (2) they

---

[2] The Court need not, at this juncture, determine which, if any, of Plaintiff's claims against Defendant SSJ constitute intentional torts under the WDCA and, therefore, fall outside the scope of the WDCA because Defendant has not established that the WDCA's exclusive remedy applies in this matter.

are barred by the WDCA; and (3) Plaintiff has failed to allege that any individual employed by Defendant SSJ "contributed to [Upshaw's] death."   Defendant's first two arguments have been addressed immediately above.

As for Defendant's argument that Plaintiff has failed to allege that SSJ contributed to Upshaw's death, such is unpersuasive for two reasons.   First, Defendant's argument consists of two conclusory sentences unsupported by analysis or citation to authority (*see* ECF No. 112-1, PageID.1878-79) and has, therefore, been waived.   *See, e.g., United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2014) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.   It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones"). Second, Plaintiff sufficiently articulates in her complaint the conduct by SSJ that she alleges caused Upshaw's death.   Accordingly, this argument is rejected.

D.    Intentional and Negligent Infliction of Emotional Distress

In support of her emotional distress claims, Plaintiff alleges that Defendant SSJ qualified Upshaw to play basketball despite having knowledge that Upshaw was suffering from a compromised cardiac condition.   (ECF No. 92, PageID.1637, 1639-41, 1644, 1652-53, 1655-58).   Plaintiff also alleges that Defendant (1) failed to properly respond to Upshaw's medical emergency on March 24, 2018, and (2) failed to perform various actions prior to March 24, 2018, which allegedly would have prevented Upshaw's death.   (*Id.*, PageID.1645).   Defendant advances two arguments in support of dismissal

of Plaintiff's emotional distress claims.   First, Defendant argues that Plaintiff's claim

for intentional infliction of emotional distress fails because Plaintiff has not sufficiently

alleged causation.   Defendant also argues that both of Plaintiff's emotional distress

claims must be dismissed because Plaintiff was not present when Upshaw collapsed on

the court on the night of March 24, 2018.

      1.     Physical Presence

In support of its argument that Plaintiff can assert claims for emotional distress

only if she was present at the DeltaPlex on the night in question, Defendant cites to

*Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732 (Mich. Ct. App. 1986).   The

*Wargelin* court observed, however, that a plaintiff claiming emotional distress had to

either be present at the time of the injury *or* suffer shock "fairly contemporaneously"

with the injury.   *Id.* at 734-35.   Plaintiff alleges that she watched the events in question

live and suffered her injury contemporaneous with Upshaw's injury.   Defendant's

argument is, therefore, rejected.

      2.     Intentional Infliction of Emotion Distress

      a.     Causation

Causation is an element of a claim for intentional infliction of emotional distress.

*See Dalley v. Dykema Gossett*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010).   In the context

of bystander claims for emotional distress, Michigan courts have observed that causation

contemplates a "shocking" event that "contemporaneously, and by its very nature,

results in emotional and physical injury to the plaintiff."   *Brennan v. Chippewa County*

*War Memorial Hospital, Inc.*, 2014 WL 5306621 at *9 (Mich. Ct. App., Oct. 16, 2014) (citations omitted).

In *Brennan*, for example, the plaintiff alleged emotional distress based upon the alleged failure of a hospital clerk, several days earlier, to collect and convey certain information regarding the decedent to hospital staff.  *Id.* at *6-10.  The court upheld the dismissal of this claim on the ground that the plaintiff's allegations did not establish causation.  *Id.* at *9-10.  Likewise, in *Pate v. Children's Hospital of Michigan*, 404 N.W.2d 632 (Mich. Ct. App. 1986), the plaintiff alleged that her sister died as a result of the defendant's failure, two days earlier, to properly diagnose her sister's condition.  *Id.* at 633.  The court upheld the dismissal of the plaintiff's claim for emotional distress on the ground that the plaintiff's allegations failed to establish causation.  *Id.* at 633-34.

To the extent that Plaintiff's intentional infliction of emotional distress claim is premised on acts or omissions by Defendant prior to March 24, 2018, causation fails. Simply put, because the conduct alleged occurred prior to the events of March 24, 2018, Plaintiff cannot establish the requisite causal connection between Defendant's alleged conduct and her alleged injury.[3]

b.    Outrageous Conduct

Plaintiff also alleges that Defendant engaged in tortious behavior following Upshaw's collapse on March 24, 2018.   While these allegations may satisfy the

---

[3] While this analysis perhaps applies with equal force to Plaintiff's negligent infliction of emotional distress claim, Defendant expressly limited its argument to Plaintiff's claim for intentional infliction of emotional distress.

causation element, such nevertheless fail because they do not satisfy the extreme or outrageous conduct element.

To satisfy this element, Plaintiff must establish that Defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Dalley*, 788 N.W.2d at 694.    Whether alleged conduct satisfies this standard is initially a question for the Court to resolve.    *Id.* at 694-95.    Only where people may reasonably disagree on the matter does such present a question for the jury to resolve.    *See, e.g., Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (citing Michigan law).

Plaintiff alleges that Defendant was responsible for employing medical personnel to serve at Grand Rapids Drive games and that such medical personnel were, in fact, retained and present on the night in question.    (*Id.* at ¶¶ 30-31, 54).    Plaintiff concedes that the medical personnel retained by SSJ responded to Upshaw following his collapse, albeit allegedly insufficiently.    Plaintiff does not allege that any employee or representative of Defendant SSJ was present at the DeltaPlex on the night in question and interfered with the ability of medical personnel or others to respond to Upshaw after he collapsed.    While not stated in these terms, the essence of Plaintiff's claim, at least with respect to the events of March 24, 2018, is that representatives of SSJ, none of whom are alleged to be medical professionals, should have ventured on to the court and displaced the medical professionals employed to respond to Upshaw.

-21-

Plaintiff may have viable causes of action against the individuals and entities retained by SSJ.   Likewise, Plaintiff may have other viable claims against SSJ.   But, with respect to the events of March 24, 2018, Plaintiff has failed to allege, as to Defendant SSJ, facts which rise to the level of "outrageous" conduct necessary to maintain a claim for intentional infliction of emotional distress.   *See, e.g., Pate*, 404 N.W.2d at 634 (alleged failure to properly diagnose an individual's condition may constitute a "tortious omission," but such did not rise to the level of "shocking" behavior necessary to maintain a claim for emotional distress).   Accordingly, for the reasons discussed herein, the undersigned recommends that Plaintiff's claim against Defendant SSJ for intentional infliction of emotional distress be dismissed for failure to state a claim on which relief may be granted.

## V.    Defendant DeltaPlex

Plaintiff has asserted against Defendant DeltaPlex the following claims: (1) negligence; (2) gross negligence; (3) intentional infliction of emotion distress; (4) negligent infliction of emotional distress; and (5) wrongful death.   Defendant advances several arguments in support of its request for relief.

### A.    Gross Negligence

Defendant argues that Plaintiff's gross negligence claim fails because gross negligence is not an independent cause of action under Michigan law.   Defendant is correct that courts often declare that gross negligence "is not an independent cause of action" under Michigan law.   *See, e.g., Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011).

A closer look at this authority, however, reveals that gross negligence is a distinct, albeit limited, cause of action under Michigan law.

Under Michigan law, employees of governmental agencies are afforded immunity from tort liability if the following criteria are satisfied: (1) the employee was acting within the scope of his employment; (2) the agency in question was engaged in the exercise or discharge of a governmental function; and (3) the employee's conduct "does not amount to gross negligence that is the proximate cause of the injury or damage." *See Beals v. Michigan*, 871 N.W.2d 5, 9 (Mich. 2015); Mich. Comp. Laws § 691.1407(2).

When suing a government employee under Michigan law, plaintiffs will often assert a claim for "gross negligence" to defeat the defendant's assertion of immunity. *See Bletz*, 641 F.3d at 756.   In this context, it is not inaccurate to conclude that gross negligence is not an independent cause of action, as it is instead a barrier the plaintiff must overcome to defeat a claim of immunity and pursue her other causes of action. *Ibid.*   Courts have also rejected claims of gross negligence under Michigan law where a plaintiff has attempted "to transform claims involving elements of intentional torts into claims of gross negligence."   *See, e.g., Caldwell v. City of Southfield*, 2015 WL 7016336 at *10 (E.D. Mich., Nov. 12, 2015); *Bletz*, 641 F.3d at 756.   Thus, there are certainly circumstances in which Michigan law rejects claims alleging gross negligence.

Two of the cases cited by Defendant, however, expressly recognize a cause of action under Michigan law for gross negligence.    In *Xu v. Gay*, 688 N.W.2d 166 (Mich. Ct. App. 2003), a private fitness center was sued, in part for gross negligence, for injuries a patron suffered falling off a treadmill.    *Id.* at 167-68.    While the Court of Appeals affirmed the dismissal of the gross negligence claim, the court expressly recognized the viability of such.    Likewise, in *Sa v. Red Frog Events, LLC*, 979 F.Supp.2d 767 (E.D. Mich. 2013), also cited by Defendant, the court expressly stated that the plaintiff "has stated a claim for gross negligence" under Michigan law.    *Id.* at 778.

In citing to these cases, Defendant argues that "courts have only permitted a stand-alone gross negligence claim when a contractual waiver of liability is at issue." While these two cases both appear to have involved waiver of liability questions, the Court discerns nothing in the analysis of either decision limiting claims of gross negligence to such circumstances.    If gross negligence claims were, in fact, limited to circumstances involving waiver of liability issues, the Court would expect language similar to that in decisions such as *Gretz*, discussed above, where the court recognized the distinction between a (1) separate cause of action for gross negligence and (2) the need to demonstrate gross negligence as a way to overcome a barrier to pursuing a different claim.    Instead, both of the cases cited by Defendant simply recognized the existence under Michigan law of a claim for gross negligence.    Accordingly, the Court rejects Defendant's argument that there does not exist under Michigan law a distinct cause of action for gross negligence.

-24-

B.    Negligence and Gross Negligence – Existence of Duty

Defendant argues that Plaintiff's negligence and gross negligence claims fail because it did not owe a duty to Upshaw.   The existence of a duty is an element of both negligence and gross negligence claims.   *See, e.g., Smith v. Jones*, 632 N.W.2d 509, 514 (Mich. Ct. App. 2001).   Whether a defendant owes a duty to a particular plaintiff is a question of law.   *See, e.g., Bailey v. Schaaf*, 835 N.W.2d 413, 418 (Mich. 2013). Defendant does not argue that Plaintiff's claims rely on the existence of a duty inapplicable in the present circumstance.   Defendant likewise does not argue that to the extent that it owed a duty to Upshaw, such duty was not breached.   Instead, Defendant asserts the straightforward argument that "no duty existed here as a matter of law."

In her complaint, Plaintiff identifies the ways in which Defendant allegedly failed to satisfy its duty to Upshaw.   Plaintiff's allegations can be grouped into three categories: (1) failure by Defendant to treat Upshaw on March 24, 2018; (2) failure by Defendant to employ qualified medical professionals prior to March 24, 2018; and (3) implementation of a policy "encouraging or requiring the treatment of players off-court despite that policy's risk to player health."   (ECF No. 92, PageID.1648-50).

While the general rule is that "there is no duty that obligates one person to aid or protect another," the law nevertheless "imposes a duty of care when a special relationship exists."   *Bailey*, 835 N.W.2d at 418-19.   A special relationship in this context exists between those who own, occupy, or exert control over property and their "invitees."   *Id.* at 419.   Plaintiff alleges that Defendant DeltaPlex owned, controlled,

and exerted control over the DeltaPlex, the facility in which the events of March 24, 2018, occurred.   Thus, the question becomes whether Upshaw is properly characterized as an "invitee" of Defendant DeltaPlex.

Michigan common law recognizes three categories of persons who enter upon the land or premises of another: (1) trespasser; (2) licensee; and (3) invitee.   *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000).   These categories each correspond to a different standard of care that is owed to those injured on the owner's premises.   As there is no suggestion that Upshaw was trespassing on the night in question, the question is whether Upshaw was a licensee or an invitee.   A licensee is defined as "a person who is privileged to enter the land of another by virtue of the possessor's consent."   *Ibid.*   An invitee is defined as "a person who enters upon the land of another upon an invitation."   *Id.* at 92.

When assessing whether a visitor is an invitee or a licensee, "the owner's reason for inviting persons onto the premises is the primary consideration."   *Id.* at 95.   Where the owner invites someone on to their property for a commercial purpose, the visitor is considered an "invitee."   As the Michigan Supreme Court stated, "[i]t is the owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of [the] higher duty" that extends to invitees.   *Ibid.*; *see also*, *Spencer v. DTE Electric Co.*, 718 Fed. Appx. 376, 382 (6th Cir., Dec. 27, 2017) (employee of business contracted by the land owner to perform services is properly characterized as an invitee under Michigan law).

-26-

Plaintiff has alleged facts sufficient to demonstrate that he was an invitee of Defendant DeltaPlex.   Moreover, to the extent that there exists a factual dispute as to whether Upshaw was an invitee, such is for the jury to resolve.   *See Stitt*, 614 N.W.2d at 91 ("if there is evidence from which invitee status might be inferred, it is a question for the jury").   Because Plaintiff has sufficiently alleged that he was an invitee, there existed a special relationship between Upshaw and Defendant which imposed upon Defendant a duty to "use reasonable care to protect [Upshaw] from unreasonable risks of harm posed by dangerous conditions on the owner's land."   *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012).

Defendant disputes this conclusion by arguing that "[t]his is not a premises liability case, and Plaintiff makes no allegation that Mr. Upshaw suffered injury as a result of any 'dangerous condition of the premises.'"   The Court recognizes that many of Plaintiff's allegations regarding these claims seem a poor fit for the duty that exists in this matter.   For example, Plaintiff alleges that Defendant DeltaPlex failed to perform CPR on Upshaw after he collapsed.   This allegation, even if true, arguably fails to establish a breach of the aforementioned duty.   Defendant's argument is ultimately unpersuasive, however, for two reasons.

First, Defendant has not argued that Plaintiff failed to sufficiently allege a breach of any duty owed to Upshaw by Defendant.   Instead, Defendant argued merely that "no duty existed here as a matter of law."   As discussed above, however, the Court finds that a duty in this matter does exist.   Second, there is at least one of Plaintiff's allegations

-27-

that directly alleges that Upshaw suffered an injury as a result of a "dangerous condition of the premises."

Plaintiff alleges that, after Upshaw collapsed, "staff and personnel" gathered around Upshaw, but failed to take any action to assess his condition or administer treatment.   Not until being physically removed from the court by paramedics, several minutes later, did Upshaw receive any medical attention by which time he had suffered grievous, and ultimately fatal, injury.   Plaintiff alleges that the reason Upshaw did not receive immediate medical treatment was because Defendant DeltaPlex implemented a policy "encouraging or requiring the treatment of players off-court despite that policy's risk to player health."   This allegation, if proven, arguably constitutes a breach of the duty to protect Upshaw from an unreasonable risk of harm posed by a dangerous condition on the premises.

Defendant, however, challenges the sufficiency of this particular allegation on the ground that it is plead "upon information and belief."   Defendant argues that this "qualifier" renders the allegation deficient as a matter of law.   The Court is not persuaded.   As courts recognize, "qualifying words such as 'upon information and belief' and 'appear' are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts." *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F.Supp.2d 758, 765 (S.D. Ohio 2010).   Courts further recognize that pleading based upon information and belief is permitted "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual

information that makes the inference of culpability plausible." *Cassidy v. Teaching Co., LLC*, 2014 WL 1599518 at *3 (S.D. Ohio, Apr. 21, 2014) (collecting authority).

Here, the facts relative to Plaintiff's allegation that Defendant implemented the policy in question is within Defendant's possession and control.   Furthermore, this allegation is certainly plausible, given the allegations concerning the events, recorded on video, immediately following Upshaw's collapse.   The fundamental test under *Iqbal* and *Twombly* is whether a plaintiff has alleged facts which state a claim for relief which is "plausible on its face."   *Iqbal*, 556 U.S. at 677-78.   Moreover, when assessing whether a complaint satisfies this standard, the Court draws upon "its judicial experience and common sense."   *Id.* at 678-79.   The Court is not persuaded that Plaintiff's allegations regarding Defendant's alleged policy fails to satisfy the *Iqbal/Twombly* standard.[4]

C.    Intentional Infliction of Emotional Distress

Plaintiff's allegations regarding her claim for intentional infliction of emotional distress fall into three categories: (1) failure by Defendant to treat Upshaw on March 24, 2018; (2) failure by Defendant to employ qualified medical professionals prior to March 24, 2018; and (3) implementation of a policy "encouraging or requiring the

---

[4] Defendant also argues that Plaintiff's allegations regarding Defendant's alleged policy is somehow inconsistent with Plaintiff's allegations that Life EMS responded to Upshaw's medical emergency too slowly.   This argument is rejected, as it is premised on a mischaracterization of Plaintiff's allegations.   Plaintiff does not allege that Defendant had a policy to get "players off the court quickly without medical attention" as Defendant asserts.   Instead, Plaintiff alleges that Defendant implemented a policy that encouraged or required medical personnel to refrain from treating a player until he was removed from the court.   This is not inconsistent with the allegation that Life EMS responded too slowly.

treatment of players off-court despite that policy's risk to player health."    To prevail on this claim, Plaintiff must satisfy the following elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Dalley*, 788 N.W.2d at 694.    Defendant argues that Plaintiff's claim for intentional infliction of emotional distress must be dismissed for failure to state a claim.

1.    Extreme and Outrageous Conduct

For the same reasons the Court articulated with respect to Defendant SSJ, Plaintiff's claims regarding the alleged failure by DeltaPlex to treat Upshaw on March 24, 2018, simply do not rise to the level of extreme or outrageous conduct. Plaintiff concedes that, on the night in question, medical personnel were present and responded, allegedly deficiently, after Upshaw collapsed.    Plaintiff does not allege that any employee or representative of Defendant DeltaPlex interfered with these medical personnel.    Again, Plaintiff basically alleges that representatives of DeltaPlex, none of whom are alleged to be medical professionals, should have ventured on to the court and displaced the medical professionals who responded to Upshaw.    While these allegations may support some other cause of action, they simply do not constitute extreme or outrageous conduct.

With respect to Plaintiff's other allegations, that Defendant failed to employ qualified medical professionals and implemented a policy which impeded treatment of Upshaw, the Court reaches a different conclusion.    Under Michigan law, "where reasonable individuals may differ, it is for the jury to determine if the conduct was so

-30-

extreme and outrageous as to permit recovery." *Swain v. Morse*, - - - N.W.2d - - -, 2020 WL 3107696 at *9 (Mich. Ct. App., June 11, 2020).   Plaintiff alleges that Defendant was aware of the risk that basketball players like Upshaw faced if proper medical care was not available during basketball games.   Given such allegations, the Court finds that, whether the alleged failure to employ qualified medical personnel or implementing a policy that unnecessarily delayed emergency treatment for Upshaw constituted extreme and outrageous conduct is a question on which reasonable people can disagree.

    2.     Intent or Recklessness

Defendant also argues that Plaintiff's claim fails because she has failed to sufficiently allege intent or recklessness.   Specifically, Defendant argues that Plaintiff has failed to allege that Defendant "engaged in any conduct – let alone intentional or reckless conduct – directed toward Plaintiff Jewel Upshaw."   (ECF No. 109, PageID.1847).   The Court finds Defendant's interpretation of this element to be unduly restrictive and, therefore, rejects Defendant's argument.

Defendant may be correct that Plaintiff does not allege that DeltaPlex acted with the specific intent to injure Plaintiff.   Defendant's argument, however, ignores that this element can also be satisfied by alleging that Defendant acted recklessly.   *See, e.g., Hayes v. Langford*, 2008 WL 5158896 at *6 (Mich. Ct. App., Dec. 9, 2008) ("it is not dispositive that defendant may not have actually intended cause plaintiff's alleged emotional distress" as "recklessness is equally actionable as truly intentional conduct"). In the tort context, recklessness is defined as follows:

> One who is properly charged with recklessness or wantonness is not simply more careless than one who is guilty of negligence. His conduct must be such as to put him in the class with the willful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.

*Behar v. Fox*, 642 N.W.2d 426, 429 (Mich. Ct. App. 2001) (citation omitted).

Again, Plaintiff's allegations fall into three categories: (1) failure by Defendant to treat Upshaw on March 24, 2018; (2) failure by Defendant to employ qualified medical professionals prior to March 24, 2018; and (3) implementation of a policy "encouraging or requiring the treatment of players off-court despite that policy's risk to player health." With respect to the allegations in the first category, just as they do not constitute extreme and outrageous conduct, they do not demonstrate recklessness. The Court reaches a different conclusion, however, with respect to the allegations in the latter two categories.

Plaintiff alleges that Defendant, despite being aware of the risk to Upshaw and others, failed to secure the services of qualified medical personnel and also implemented a policy the impact of which was to deny or delay to Upshaw the immediate and potentially life-saving care he required on the night in question. A reasonable person could certainly conclude that such allegations, if proven, demonstrate reckless indifference. Accordingly, this argument is rejected.[5]

---

[5] The Court offers no opinion whether Plaintiff's allegations satisfy the causation element, as Defendant has not asserted any such argument.

D.    Negligent Infliction of Emotional Distress

Defendant next argues that Plaintiff's claim for negligent infliction of emotional distress fails because Defendant owed no duty to Upshaw.   As discussed above, however, the Court is not persuaded that Defendant owed no duty to Upshaw.   Thus, this argument is rejected.   Defendant also argues that Plaintiff's claim fails because she did not "witness" the events giving rise to her claim.   This argument is likewise rejected for the reasons discussed above.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant DeltaPlex's Motion to Dismiss (ECF No. 108) be granted in part and denied in part. Specifically, the undersigned recommends that: (1) Plaintiff's intentional infliction of emotional distress claim be dismissed to the extent such is premised on allegations that Defendant failed to treat Upshaw on March 24, 2018; and (2) Plaintiff's separate wrongful death claim be dismissed and Plaintiff's other causes of action, based upon injury to Upshaw, proceed under the Michigan wrongful death act.   The undersigned recommends that Defendant's motion otherwise be denied.

The undersigned further recommends that Defendant SSJ's Motion to Dismiss (ECF No. 112) be granted in part and denied in part.   Specifically, the undersigned recommends that: (1) Plaintiff's claim for intentional infliction of emotional distress be dismissed; and (2) Plaintiff's separate wrongful death claim be dismissed and Plaintiff's other causes of action, based upon injury to Upshaw, proceed under the Michigan

wrongful death act.   The undersigned recommends that Defendant's motion otherwise be denied.

The undersigned further recommends that University of Michigan Defendants' Motion to Dismiss (ECF No. 126) be granted, and that Plaintiff's claims against Defendants University of Michigan Health System and University of Michigan Board of Regents be dismissed.

The undersigned further recommends that Defendant Kornoelje's Motion to Dismiss (ECF No. 146) be granted, and that Plaintiff's claims against Kornoelje, save his medical malpractice claim, be dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 12, 2021                    /s/ Phillip J. Green
                                           PHILLIP J. GREEN
                                           United States Magistrate Judge