UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEWEL UPSHAW, individually and as the      )
Personal Representative of the Estate of       )
Zena Ray Upshaw,                                          )
                                    Plaintiff,               )
                                                                  )        No. 1:19-cv-341
-v-                                                               )
                                                                  )        Honorable Paul L. Maloney
SSJ GROUP, LLC, *et al.*,                            )
                                    Defendants.          )
_____)

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

The Court referred four motions to dismiss to the Magistrate Judge, who issued a report and recommendation.  (ECF No. 158.)  Plaintiff filed objections.  (ECF No. 160.)  Defendant SSJ Group filed objections.  (ECF No. 159.)  And, Defendant DeltaPlex Arena filed objections.  (ECF No. 161.)  The Court has conducted the required review and will adopt the report and recommendation.

After being served with a report and recommendation (R&R) issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  A district court judge reviews de novo the portions of the R&R to which objections have been filed.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  Only those objections that are specific are entitled to a de novo review under the statute.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam).

Plaintiff's second amended complaint is the controlling pleading.  (ECF No. 92.)  The Court exercises subject-matter jurisdiction over this lawsuit under the diversity statute, 28 U.S.C. § 1332.  Plaintiff pleads eleven claims or counts, all arising under Michigan law.  The claims arise from the death of Zena "Zeke" Upshaw.  Upshaw played basketball for the Grand Rapids Drive, a team in the National Basketball Association's G League.  On March 24, 2018, Upshaw collapsed on the court near the end of a game.  Plaintiff Jewel Upshaw, Zeke's mother, watched the game by live stream video.  Upshaw passed away two days later.  The complaint names six defendants: (1) SSJ Group, (2) the DeltaPlex Arena, (3) the University of Michigan Health System, (4) the University of Michigan Board of Regents, (5) Life EMS, and (6) Edwin Kornoelje, D.O.  SSJ Group filed a motion to dismiss.  (ECF No. 112.)  DeltaPlex Arena filed a motion to dismiss.  (ECF No. 108).  The two entities associated with the University of Michigan (University Defendants) filed a motion to dismiss.  (ECF No. 126.)  And, Kornoelje filed a motion to dismiss.[1]  (ECF No. 146.)

A.  Plaintiff's Objections (ECF No. 160)

The Magistrate Judge recommends granting the motion filed by the University Defendants.  Plaintiff alleges five claims or counts against the University Defendants: (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, (3) negligence, (4) gross negligence, and (5) medical malpractice.  The Magistrate Judge concludes the University Defendants are protected from lawsuits in federal courts by the

---

[1]  Defendant Kornoelje's motion relies entirely on the motions filed by the other defendants. He explicitly identifies which arguments in each of the other motions he incorporates by reference.

Eleventh Amendment.  Plaintiff objects to the recommendation.  The Court will overrule the objection.

The Magistrate Judge makes several factual and legal conclusions to which Plaintiff does not object.  The University Defendants are instrumentalities or arms of the State.  The University Defendants enjoy Eleventh Amendment immunity.   And, the Eleventh Amendment precludes federal court actions against a State and its instrumentalities unless that state waived its sovereign immunity or consented to suit in federal court.  Plaintiff does not object to these conclusions.

1.   Transfer.   Plaintiff requests that if the Court concludes that the University Defendants are entitled to immunity, the Court transfer the lawsuit to the Michigan Court of Claims rather than dismiss the claims.  Plaintiff's request is denied.  Plaintiff has not identified any mechanism that would authorize the requested transfer from federal courts to state courts.  By statute, Congress authorizes removal from state court to federal court and remand from federal court to state court.  When remand occurs, it necessarily followed a removal. The statute does not authorize a federal court to transfer a lawsuit originally filed in federal court to a state court.  Accordingly, Plaintiff's authority, *Estate of Ritter v. University of Michigan*, 851 F.2d 846 (6th Cir. 1988), which involved a removal and subsequent order to remand, does not help.

2.   Waiver of Immunity.   The Magistrate Judge concludes that the University Defendants are arms of the State and are entitled to Eleventh Amendment immunity. Plaintiff objects.  Plaintiff argues Michigan has waived its immunity from suit.  Plaintiff relies almost exclusively on opinions issued by Michigan courts and discussions of Michigan's

Governmental Tort Liability Act (GTLA).  The Court overrules Plaintiff's objection.  The Magistrate Judge succinctly explained why Plaintiff's reliance on this authority is not persuasive: "whether Defendants would be entitled to immunity under Michigan law in an action properly pursued in a state court is not relevant to the Eleventh Amendment analysis." (R&R at 12 PageID.2719.)  None of the cases cited by Plaintiff demonstrate that Michigan has "unequivocally expressed" consent to be sued in *federal* court.  *See Pennhurst State Sch. & Hosp. v Halderman*, 465 U.S. 89, 99 (1984).  Our Supreme Court has "consistently held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."  *Id.* at 99 n.9.  Plaintiff has not demonstrated that Michigan's GTLA contains any unequivocal waiver of Eleventh Amendment immunity.  *See Wolfe v. Oakland Univ.*, No. 15-cv-13560, 2016 WL 7048812, at *6-*7 (E.D. Mich. Dec. 5, 2016).

   B.  Defendant SSJ Group's Objections (ECF No. 159)

   1.  Jurisdiction.  The Magistrate Judge recommends rejecting SSJ Group's argument that this Court lacks subject-matter jurisdiction over Plaintiff's claims against SSJ Group.  SSJ Group argues that Michigan's Worker's Disability Compensation Act (WDCA) provides the exclusive remedy for Plaintiff's claims against SSJ Group. The premise of SSJ Group's argument is that Plaintiff pleads that SSJ Group was Upshaw employer.  With that premise, SSJ Group argues Plaintiff's claims fall under the WDCA and concludes, therefore, that this Court lacks subject-matter jurisdiction over the claims.  The Magistrate Judge treated the jurisdictional challenge as a factual challenge and considered the evidence submitted with Plaintiff's response.  The Magistrate Judge concludes that Plaintiff presented sufficient

evidence to show that Upshaw's employer was Basketball Services Corporation (BSC) and not SSJ Group. SSJ objects, insisting that the Magistrate Judge did not fully apply the economic realities test. The Court will overrule the objection.

This Court may exercise subject-matter jurisdiction to determine the existence of or lack of an employer-employee relationship. In *Sewell v. Clearing Machine Corporation*, 347 N.W.2d 447, 450 (Mich. 1984), the Michigan Supreme Court held that while the Bureau of Worker's Compensation "has exclusive jurisdiction to decide whether injuries suffered by an employee were in the course of employment," courts "retain the power to decide the more fundamental issue of whether the plaintiff is an employee (or a fellow employee) of the defendant." Twenty years later, in *Reed v. Yackell*, 703 N.W.2d 1, 11 (Mich. 2005), the same court noted that *Sewell* may have been wrongly decided, but expressly "decline[d] to overrule *Sewell* on this record." The holding in *Sewell* remains binding on this Court, and this Court has subject-matter jurisdiction to determine if SSJ Group was Upshaw's employer. Therefore, the Court agrees with the recommendation of the Magistrate Judge that Defendant SSJ Group's Rule 12(b)(1) jurisdictional challenge should be denied.

To be clear, this Court has not decided whether Defendant SSJ Group was or was not Upshaw's employer. The answer to that question—the existence of an employer-employee relationship under Michigan law—should rarely be resolved under Rule 12. *See, e.g., Miller v. Stewart*, No. 15-14164, 2016 WL 8458985, at *3 (E.D. Mich. Dec. 13, 2016) ("It is notable that the economic realities test is a fact-intensive inquiry that is unlikely to ever be decided on a motion to dismiss. . . . This test is a loose formulation, leaving the determination of employment status to a case-by-case resolution based on the totality of the

circumstances."). A court may find an employment relationship as a matter of law only where "the evidence on the matter is reasonably susceptible of but a single inference" and "where evidence of a putative employer's status is disputed, or where conflicting inferences may reasonably be drawn from the known facts, is the issue one for the trier of fact." *Clark v. United Techs. Auto., Inc.*, 594 N.W.2d 447, 453 (Mich. 1999). Here, Plaintiff pleads facts that might support the conclusion that SSJ Group was Upshaw's employer. But, Plaintiff has not pled that SSJ Group was Upshaw's employer and, in her response, Plaintiff explicitly denies that SSJ Group was Upshaw's employer. At this point in the litigation, the parties have not presented evidence concerning the totality of the circumstances. The Court declines SSJ Group's invitation to apply the economic realities test to the allegations in the complaint. Should SSJ Group want to prove it was Upshaw's employer, it may try to do so as part of a motion for summary judgment.

2. Duty. SSJ Group questions whether it owed any duty to Upshaw if it was not his employer. SSJ Group argues that duty arises only from a relationship. SSJ Group reasons that if it had no control over Upshaw, then it likely had no duty to Upshaw.

The Court declines to consider this "no duty" argument. In its motion to dismiss, SSJ Group did not argue that it did not owe any duty to Upshaw. The word "duty" appears exactly once in SSJ Group's motion to dismiss (PageID.1872). The argument advanced here is not an objection to any specific portion of the Report and Recommendation.

C. DeltaPlex Arena's Objections (ECF No. 161)

1. Treat-Off-The-Court Policy. Plaintiff alleges DeltaPlex Arena had a treat-off-the-court policy that likely contributed to Upshaw's death. The Magistrate Judge concludes that

Plaintiff's use of the phrase "upon information and belief" was not sufficient to render the allegation deficient as a matter of law.  DeltaPlex Arena objects.  The Court overrules the objection and finds no error in the Magistrate Judge's assessment of the issue.  The Court also notes that Plaintiff pleads that the trained medical personnel like the paramedics at the scene would ordinarily be taught to triage for and expeditiously rule in and rule out possible life-threatening causes.  (Compl. ¶ 49.)  The medical personnel on the scene did not provide any triage or immediate treatment, which allows for the plausible inference of a treat-off-the-court policy.

2.  Lack of Duty.  Plaintiff alleges DeltaPlex Arena had a special relationship with Upshaw and owed him a duty to reasonably respond to his medical emergency.  DeltaPlex Arena argued in its motion to dismiss that it had no duty to Upshaw.  The Magistrate Judge concludes that, under the circumstances pled in the complaint, DeltaPlex Arena had some duty to Upshaw.  DeltaPlex Arena objects.  DeltaPlex Arena argues that the Magistrate Judge erred by relying on a premises liability theory when the facts do not support a claim for premises liability.

The Court overrules the objection.  The Magistrate Judge's conclusion must be read in context.  DeltaPlex Arena argued that it did not owe Upshaw *any* duty.  The Magistrate Judge concludes at the very least a question of fact exists whether Upshaw was an invitee.  And, if he was an invitee, DeltaPlex Arena owed him a duty.  With that conclusion, the Magistrate Judge recommends that the Court not dismiss the negligence claims.  The Court agrees.  The Court further notes that Plaintiff pleads facts that, if true, would create a special relationship (and a duty) other than that of an invitee.  Contrary to what DeltaPlex Arena

argued in its motion, Plaintiff does plead that DeltaPlex Arena voluntarily provided medical services and by doing so then violated its duty to provide the service in a reasonable manner. Plaintiff pleads that DeltaPlex Arena promotes the existence and availability of emergency medical services for its events.  (Compl. ¶¶ 31-34, 51-53, 60, and 101.)  While Plaintiff also pleads facts that would support the conclusion that other defendants assumed the responsibility to provide medical treatment, a plaintiff can plead theories in the alternative. Finally, in its motion DeltaPlex Arena argues that the promotional material quoted in the complaint concerning the availability of medical services are not statements made by DeltaPlex Arena.  But, that is not Plaintiff's allegation and for the purpose of a motion to dismiss, courts must accept as true the allegations in the complaint.

3.  Gross Negligence.  The Magistrate Judge concludes that Michigan law recognizes a claim for gross negligence.  DeltaPlex Arena objects.  The Court overrules the objection.

The history of claims for gross negligence in Michigan is somewhat complicated. Without question, some federal and state court opinions are written in a manner that supports DeltaPlex Arena's position.  The Court finds the following passage by Judge Judith Levy in the Eastern District of Michigan succinct and to the point:

> Gross negligence is not an independent cause of action in Michigan.  *See Xu v. Gay*, 257 Mich. App. 263, 268-69, 668 N.W.2d 166 (2003).  At common law in Michigan, gross negligence was not a higher degree of negligence; it was a device to escape contributory negligence.  *Gibbard v. Cursan*, 255 Mich. 311, 319, 196 N.W. 398 (1923), *overruled by Jennings v. Southwood*, 446 Mich. 125, 131-32, 521 N.W.2d 230 (1994) *abrogated on other grounds.*  However, Michigan replaced the rule of contributory negligence with comparative negligence.  *Placek v. Sterling Heights*, 405 Mich. 638, 650, 275 N.W.2d 511 (1979). And the Michigan Supreme Court therefore discarded the doctrine of common law gross negligence, recognizing that it had outlived its practical usefulness.  *Jennings*, 446 Mich. At 129, 521 N.W.2d 230.

*In re Flint Water Cases*, 384 F. Supp. 3d 802, 871 (E.D. Mich. 2019).  Currently, claims for gross negligence most often arise when statutes employ the term, like the Emergency Medical Services Act (EMSA) and the GTLA.  *See Xu*, 668 N.W.2d at 170 (identifying multiple statutes).  While those statutes allow a plaintiff to overcome immunity by proving gross negligence, Michigan courts have consistently found that the statutes do not create an independent cause of action.  *See, e.g., Cummins v. Robinson Twp.*, 770 N.W.2d 421, 433 (Mich. Ct. App. 2009) (GTLA); *Bletts v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011) (same).  Courts have also rejected attempts to transform elements of intentional tort claims into claims for gross negligence.  *See VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004) *abrogated on other grounds by Odom v. Wany Cty.*, 760 N.W.2d 217 (Mich. 2008)); *Rucinski v. Cty. of Oakland*, 655 F. App'x 338, 344 (6th Cir. 2016).

While it is possible to interpret *Jennings* as a rejection of the gross negligence tort in Michigan law, it is also possible to interpret *Jennings* as simply rejecting the manner in which Michigan courts had previously defined the gross negligence tort.  *Jennings* involved a statutory claim, not a common law claim.  The EMSA did not define the phrase "gross negligence."  *Jennings* concluded that the common law definition of gross negligence was no longer viable and should not be used to define the phrase used by the statute.  Instead, the Court used the definition of "gross negligence" found in GTLA.

After *Jennings*, Michigan courts continue to recognize common law gross negligence claims, almost always when the defendant raises a contractual waiver as an affirmative defense.  *See Xu*, 668 N.W.2d at 170; *Lamp v. Reynolds*, 645 N.W.2d 311, 314 (Mich. Ct.

App. 2002); *accord Sa v. Red Frog Events, LLC*, 979 F. Supp. 2d 767, 779 (E.D. Mich. 2013).  These cases permit the inference that gross negligence continues to be a viable tort under Michigan law.  The waiver defense is only a consideration if the Michigan law continues to recognize the gross negligence tort.  The Court also notes that in 2010, the Michigan Supreme Court considered a parent's waiver on behalf of a child is enforceable. *Woodman ex rel. Woodman v. Kera, LLC*, 785 N.W.2d 1, 2 (Mich. 2010).  After the child was injured at a venue with inflatable play equipment, the parents filed a lawsuit alleging, among other claims, gross negligence.  Importantly, the Court did not consider whether gross negligence was a viable cause of action under Michigan law.  All of the opinions issued necessarily assumed that the tort was viable and proceeded to address the enforceability of the waiver.  If Michigan law does not recognize gross negligence as a tort, all of the opinions in *Woodman* are mere dicta.  This Court will make the same assumption, that Michigan recognizes gross negligence as a tort.

    3.  Intentional Infliction of Emotional Distress.  The Magistrate Judge concludes that Plaintiff pled sufficient facts to state a plausible claim.  DeltaPlex Arena objects.  First, DeltaPlex Arena repeats its argument that it did not have an off-the-court treatment policy. Consistent with the previous discussion, the Court overrules that objection.  Second, DeltaPlex Arena argues that the complaint sets forth facts showing that other defendants were responsible for providing qualified medical personnel.  The Court also overrules this objection.  Plaintiff is entitled to plead alternative theories.  Plaintiff pleads that DeltaPlex Arena failed to employ qualified medical personnel.  Finally, DeltaPlex Arena requests the Court dismiss the intentional infliction of emotional distress claim because the Magistrate

Judge found no causation for the same claim against Defendant SSJ.  DeltaPlex Arena concedes that it did not raise the argument in its motion.  This argument is not a proper objection to any finding or recommendation in the Magistrate Judge's report, and the Court declines to consider it at this point in the litigation.

4. Negligent Infliction of Emotional Distress.  The Magistrate Judge relies on earlier findings and recommendations to conclude that a duty existed and that viewing the event live on-line can give rise to a claim.  DeltaPlex Arena objects.  The Court overrules the objections. The Court previously addressed the duty issue.  For its argument that a plaintiff must be physically present, not on-line, to state a negligent infliction claim, DeltaPlex Arena's relies on *Clifton v. McCammack*, 43 N.E.3d 213, 223 (Ind. 2015).  *Clifton* can be easily distinguished.  Here, Plaintiff watched the event live and in real time.  In *Clifton*, the plaintiff learned about the car accident involving his son while watching the news.  He did not see the accident, he arrived on the accident scene approximately forty minutes later, and the scene had been altered by emergency personnel, which included covering the body so that no signs of trauma were visible.  Finally, the Court disagrees that Plaintiff merely pleaded inadequate medical care.  Plaintiff pleaded facts that would give rise to the sort of shock and emotional distress from which this claim can arise.

## ORDER

1.  The Court **ADOPTS** as its Opinion the Report and Recommendation (ECF No. 158);

2.  The Court **GRANTS IN PART and DENIES IN PART** Defendant DeltaPlex Arena's motion to dismiss (ECF No. 108);

3.  The Court **GRANTS IN PART and DENIES IN PART** Defendant SSJ Group's motion to dismiss (ECF No. 112);

4.  The Court **GRANTS** the University Defendants' motion to dismiss (ECF No. 126); and

5.  The Court **GRANTS IN PART and DENIES IN PART** Defendant Kornoelje's motion to dismiss (ECF No. 146) consistent with the manner in which the claims against him are resolved in the other motions filed by the other defendants.  Because Defendant Kornoelje incorporates by reference the arguments advanced in the other motion, and because not all of those claims were dismissed, the Court does not dismiss all of the claims against this defendant.

   **IT IS SO ORDERED.**

Date:  March 25, 2021                                        /s/ Paul L. Maloney
                                                             Paul L. Maloney
                                                             United States District Judge